**Marie ELLSWORTH & Paul Ellsworth, Plaintiffs-Appellants,**

v.

**CITY OF RACINE, a municipal corporation, Defendant-Appellee.**

No. 84–2713.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1985.

Decided Sept. 23, 1985.

Linda S. Vanden Heuvel, Milwaukee, Wis., for plaintiffs-appellants.

Joseph E. Boyle, Racine, Wis., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.*

FLOYD R. GIBSON, Senior Circuit Judge.

The plaintiffs, Marie and Paul Ellsworth, appeal from the district court's dismissal of their complaint on the basis that it failed to state a claim upon which relief could be granted. FED.R.CIV. P. 12(b)(6). We AFFIRM.

## I.

Paul Ellsworth was an undercover narcotics officer employed by the Police Department of Racine, Wisconsin. Because of the testimony he was to give against individuals arrested as a result of an undercover investigation, Mr. Ellsworth and his family became the target of threats from underworld figures. In response to these acts of intimidation, the police department assigned an officer to protect Ms. Ellsworth for the eight hours each day that her husband was working. On July 21, 1980, Ms. Ellsworth and her bodyguard saw an automobile driving slowly past the Ellsworth home. At 6:30 p.m. the same day Ms. Ellsworth released her bodyguard

---

* Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, is sitting by designation.

from duty. Shortly thereafter, Ms. Ellsworth went into her backyard looking for her dog. While outside, she was attacked by a masked man who told her to "tell the pig to keep his mouth shut." The man beat Ms. Ellsworth severely.

The plaintiffs brought this action pursuant to the Civil Rights Act of 1871. 42 U.S.C. § 1983 (1982).[1] In their complaint, the plaintiffs alleged that the defendant City of Racine (City) denied Ms. Ellsworth her Fourteenth Amendment rights by negligently failing to provide her with round-the-clock police protection.

### II.

■ The plaintiffs argue that the district court erred in dismissing their complaint, because it adequately stated a claim upon which relief could have been granted. The plaintiffs contend that, first, by deciding to provide Ms. Ellsworth with police protection, the police department either acted pursuant to an official policy or established an official policy on behalf of the City.[2] Second, because the Ellsworth family was endangered as a direct result of Mr. Ellsworth's work with the police department, the Ellsworth family had a special relationship with the City. Third, because of this relationship, the City had an obligation to protect Ms. Ellsworth from harm. Finally, by failing to protect Ms. Ellsworth adequately, the City "caused" an unjustified intrusion into her Fourteenth Amendment rights to bodily integrity and personal security. In other words, the City had a constitutional duty to protect Ms. Ellsworth, the City breached that duty, and, as a result, Ms. Ellsworth suffered great bodily injury. These allegations, plaintiffs argue, establish a claim for relief under § 1983 against the City. We disagree.

■ The sole issue on appeal is the sufficiency of the complaint. We take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) *quoting, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). It is true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. *Conley*, 355 U.S. at 47, 78 S.Ct. at 102; *Benson*, 761 F.2d at 338. Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery. *Benson*, 761 F.2d at 338. We hold that the allegations in the plaintiffs' complaint failed to outline the elements of a constitutional violation by the City.

One of the initial inquiries in a § 1983 case is whether the conduct complained of deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), *quoting, Baker v.*

---

**1.** 42 U.S.C. § 1983 (1982) provides in pertinent part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**2.** It is unclear what the plaintiffs perceive as the "policy" in question. At one point in their appellate brief, plaintiffs seem to argue that the decision to provide the protection is the policy at issue. At another point, plaintiffs seem to suggest that the codified purpose for the establishment of a police department is the relevant policy for purposes of § 1983, and that the decision to provide Ms. Ellsworth with protection was made pursuant to that policy. Because we hold that the plaintiffs failed to allege facts which supported a claim for relief under § 1983, we do not reach the question of whether the police department acted pursuant to, or established, an official policy.

*McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Jackson v. Byrne,* 738 F.2d 1443, 1445–46 (7th Cir. 1984). The essence of the plaintiffs' complaint is that the City violated Ms. Ellsworth's Fourteenth Amendment rights to bodily integrity and personal security by failing to protect her adequately.

█ The plaintiffs acknowledge, as they must, that the concept of liberty found in the Fourteenth Amendment does not include a right to basic public services. *Jackson v. City of Joliet,* 715 F.2d 1200, 1204 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984). That is, there is nothing in the Constitution which requires governmental units to act when members of the general public are in danger. *Jackson v. Byrne,* 738 F.2d at 1446.

> [T]here is no constitutional right to be protected by the state against [crimes committed] by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.

*Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). *See also Benson,* 761 F.2d at 339; *Jackson v. Byrne,* 738 F.2d at 1446; *Beard v. O'Neal,* 728 F.2d 894, 900 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Jackson v. City of Joliet,* 715 F.2d at 1204. However, the plaintiffs argue that Ms. Ellsworth was more than just a member of the general public. Rather, by virtue of the fact that Mr. Ellsworth was a city police officer who encountered danger as a result of his work, the City had raised the Ellsworth family above the level of the general public and had entered into a special relationship with them. Once this special relationship was established, the argument continues, the City did have a constitutional duty to protect the plaintiffs adequately.

█ The issues involved in this argument are more complex than they may appear. We have recognized that a right and corollary duty to basic protective services may arise out of special relationships created or assumed by a municipality in regard to particular people. *Benson,* 761 F.2d at 339, *quoting, Jackson v. Byrne,* 738 F.2d at 1446–47. Specifically, we have stated that when a municipality puts an individual in a position of danger from private persons and then fails to protect that individual, it cannot be heard to say that its role was merely a passive one. The municipality is as much an active tortfeasor in such a situation as if it had thrown the individual "into a snake pit." *Bowers,* 686 F.2d at 618. Indeed, we have held that: the Constitution creates a duty on the part of police officers to protect minor children from immediate hazards after police officers arrest the children's guardian, *White v. Rochford,* 592 F.2d 381 (7th Cir.1979); state mental hospitals are required by the Constitution to protect patients from known risks of assault, *Spence v. Staras,* 507 F.2d 554 (7th Cir.1974); police officers are required by the Constitution to render aid to a victim who is being beaten by the officers' colleagues, *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972); and that state prisons are required by the Constitution to provide prison inmates with basic protective services under certain circumstances. *See Benson,* 761 F.2d at 339; *Bowers,* 686 F.2d at 618. The relevant governmental organizations faced potential liability in each of these cases precisely because they had created or assumed special relationships with the plaintiffs involved in each case.

█ The contours of what constitutes a "special relationship" between a municipality, acting through its officials, and its citizens are hazy and indistinct. We have tried to lend clarity to the concept when faced with the facts presented by individual cases. Upon reviewing the facts of this case, we are unable to include within the

concept "special relationship" the relationship between the City and the Ellsworth family. There may be situations when a municipal employee and the municipality have, by virtue of the employment relationship, a special relationship for purposes of § 1983. In that case, the municipality would have a constitutional duty to provide elementary protective services to the employee. Thus, we in no way want to immunize municipalities from liability for duties they breach. We hold only that, given the facts of this case, the City had only assumed a limited special relationship with the Ellsworth family, providing a police officer assistance during certain periods of the day, *i.e.*, the City did not have a constitutional duty to protect Ms. Ellsworth. Also, there is a serious question of causation. The City did not harm Ms. Ellsworth; an unknown vindictive criminal did.

To require that police departments must, under the Constitution, provide each of its officers and their families with round-the-clock protection each time an officer receives a threat from criminals, would be to require the impossible. Police are faced with danger daily. They are responsible for the apprehension of criminals and, as a result, are the targets of retaliatory threats. Police departments simply do not have the resources to even begin to afford individualized protection to the officers and their families who are the subjects of these threats.

■ The City provided Ms. Ellsworth with a bodyguard for eight hours a day, each day for a number of weeks. Although the City did not have a constitutional duty to provide this service, the City was required to carry out the duty it had assumed in a non-negligent manner.[3] However, even assuming for the sake of argument that the City was negligent, § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort

law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker*, 443 U.S. at 146, 99 S.Ct. at 2695; *accord, Bowers*, 686 F.2d at 619. *See also Jackson v. City of Joliet*, 715 F.2d at 1205. The alleged negligence in this case did not state a claim upon which relief could have been granted under § 1983. Thus, the district court properly granted the defendant's motion to dismiss under Rule 12(b)(6). Accordingly, the judgment is AFFIRMED.

COFFEY, Circuit Judge, concurring.

Paragraph 20 of the plaintiff's complaint states that at the time the police officer assigned to protect the plaintiff left her on July 21, 1980, the plaintiff "informed the police officer that she [the plaintiff] did not think it was necessary for [the officer] to stay." I concur in the judgment because I believe this admission precludes recovery by the plaintiff on her Section 1983 claim. I write separately because I believe that if it were not for this admission, the plaintiff's complaint would state a cause of action under 42 U.S.C. § 1983 (1982).

A Section 1983 claim contains two elements. The first element is "the conduct complained of [must have been] committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (*"Parratt"*). Conduct is "under color of state law" if it is committed pursuant to either the execution of an official policy such as a statute or executive decision, or a state custom. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The plaintiff's complaint alleges that "at all times relevant, the [city] acted under the statutes, customs, ordinances and usage of the State of Wisconsin, the City of Racine, and the Racine Police Department." I read this as alleging that the defendant acted pursuant to an official policy or custom when, through its officers in

---

3. We note that the plaintiffs allege essentially that the City was negligent in failing to provide round-the-clock protection, not that the guards were negligent in the performance of their duty.

However, under this factual situation we do not think there was any negligence on the part of the City.

the Racine Police Department, the defendant made the decision to provide the plaintiff with police protection. This satisfies the first element of a Section 1983 action.

The second element of a Section 1983 action is that the defendant's conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution of the United States. *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1912. The due process clause of the 14th Amendment encompasses a right to be free from "unjustified intrusions on personal security" such as the plaintiff suffered at the hands of her attacker. *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1976). *See also, White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979) (*"White"*). Although the City has no general duty to protect members of the public from such danger, *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984) (*"Byrne"*); *Jackson v. City of Joliet,* 715 F.2d 1200, 1203–04 (7th Cir.1983) (*"Joliet"*); a constitutional duty to protect the personal security of specific members of the public exists under certain "special relationship[s]". *Byrne,* 738 F.2d at 1446–47. I agree with the majority that "what constitutes a 'special relationship' ... [is] hazy and indistinct." However, I would not be as hasty as the majority to conclude that "[u]pon reviewing the facts of this case, we are unable to include within the concept of 'special relationship' the relationship between the city and the [plaintiff]."

A review of the cases suggests at least two factors to consider in deciding whether a special relationship exists. One factor that has been stressed is whether the danger which the defendant allegedly had a duty to prevent was directed at the public at large or only at a specific individual. *See Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Fox v. Custis,* 712 F.2d 84, 88 (4th Cir.1983). Another factor to consider is how closely the danger to the plaintiff is linked to actions of the defendant. *See Byrne,* 738 F.2d at 1446. Taking the allegations of the complaint as true, in the instant case, the defendant had clear notice of a specific danger to the plaintiff. The danger was limited to the plaintiff and her family and did not encompass the general public. Moreover, the danger arose as a result of the City's actions in investigating and prosecuting illegal drug dealings in the City of Racine. I am not prepared to say that, given these allegations, no "special relationship" between the city and the plaintiff could be found in this case.

Finally, the defendant's brief raises the issue of whether the City may be held liable for negligence in protecting the plaintiff even if state action and a "special relationship" are shown. This court has accepted the view that in a Section 1983 action the state of mind of the defendant is irrelevant. *See State Bank v. Camic,* 712 F.2d 1140, 1147 (7th Cir.1983). Though simple negligence may not give rise to a cause of action under Section 1983, gross negligence clearly gives rise to a cause of action. *White,* 592 F.2d at 385. Gross negligence in this context is ignoring a known, specific danger. *Id.* Taking the allegations of the complaint as true, the City could be found to have been grossly negligent when after having been informed of potential danger to the plaintiff, the City's police officer assigned to protect the plaintiff left her unguarded after the officer observed a suspicious automobile drive slowly past the plaintiff's home. However, because the plaintiff's complaint admits that she was left unguarded as a result of her own decision, I believe the City cannot be held responsible for failing to protect her from subsequent events. Accordingly, I concur in the judgment of the majority.