**Willard Brook BENSKIN, Plaintiff,**

v.

**ADDISON TOWNSHIP, a Body Politic, Howard J. Selke, Thomas Schratzmeier and Village of Bensenville, a Municipality, Defendants.**

No. 85 C 3266.

United States District Court, N.D.Illinois, E.D.

March 6, 1986.

---

Donald E. Carlson, Chicago, Ill., for plaintiff.

Richard S. Schultz, James E. Becklery & Assoc., Susan Zwick, Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On May 20, 1981, defendant Howard Selke, Road Commissioner of defendant the Village of Addison, Illinois ("Addison"), apparently drove his official car in chase of plaintiff Willard Benskin ("Benskin"), who was riding his motorcycle. The two vehicles collided, and Benskin suffered serious injuries. Benskin sued, filing an odd complaint which, among other things, premises jurisdiction on diversity of citizenship, *see* 28 U.S.C. § 1332, while alleging four counts under 42 U.S.C. § 1983 and two counts under state tort law theories. The defendants have moved to dismiss under a number of theories. For the reasons stated below, those motions are granted in part and denied in part.

### I. *Facts*

The complaint is a confusing and confused document. It alleges several alternative factual scenarios, incorporated by ref-

erence from three pleadings from a previously filed state law case. In reviewing the complaint, we must, of course, view the well-pleaded allegations as true (although we of course make no findings of fact below and express no view on whether the complaint tells the truth). While we agree with the defendants that the complaint is muddled, it is not unintelligible, and below we summarize the events alleged in it.

Count I is a simple negligence count, naming Selke and Addison. It alleges that Benskin was riding his motorcycle in Addison in the late morning of May 20, 1981, when Selke—who was acting within the scope of his employment with Addison then—negligently drove into him. He claims he was severly injured, with damages of $500,000.

Counts II–V allege alternate theories of liability. Count II names as additional defendants the Village of Bensenville ("Bensenville") and Thomas Schratzmeier ("Schratzmeier"), a police officer from that Village. This is where the complaint spins its unusual tale. Those counts allege that Schratzmeier tried to arrest Benskin May 20, although he had no probable cause to do so. Schratzmeier allegedly left his jurisdiction of Bensenville. He drove into Addison to chase Benskin and did so recklessly and/or intentionally by doing the following: He did not turn on his mars lights or siren and drove very fast and dangerously, all in an attempt to confuse, scare and intimidate Benskin. While playing this high-speed intimidation game, Schratzmeier "expressly or by implication invited" Selke, who hap-

pened to be driving in the area, to assist in the chase and arrest. As a result of the high-speed shenanigans of the two officers, Selke's car hit Benskin's bike, causing his injuries. Benskin alleges that all of this happened apparently because Schratzmeier and other Bensenville police officers do not like motorcyclists. This conduct is alleged to amount to the use of excessive and unreasonable force in effecting an illegal arrest, in violation of the Fourteenth Amendment, as well as Illinois statutes.[1] *See* Ill.Rev.Stat. ch. 38, ¶ 107–2, 107–4, 107–8 (1983).

Count III names Selke only. It alleges that he tried to arrest Benskin by cutting off the path of Benskin's cycle, even though there was no probable cause for the arrest, and Selke had no authority to make the arrest. He allegedly violated the Fourteenth Amendment by using excessive force in the arrest and conspired with Schratzmeier in doing so. Benskin invokes 42 U.S.C. §§ 1981, 1983 and 1985 in support of this count.

Counts IV and V name Bensenville and Addison, respectively. As for Bensenville, Count IV alleges that its police department had a custom and policy of patrolling outside of village boundaries and of harassing motorcyclists so that they will leave the village. Moreover, it allegedly had a custom and policy of inducing motorcyclists to commit traffic violations and would do so by playing high-speed chase games with the cyclists. Schratzmeier allegedly carried out this policy by setting up the dangerous chase as described above.[2] Count

---

**1.** A § 1983 claim cannot be based merely on the violation of Illinois law. However, the violation of these Illinois statutes may prove to be tangentially relevant to whether "excessive force" was used as a federal constitutional matter.

**2.** The complaint describes the chase as follows:
  a. Made violent and abrupt movements in traffic as though an emergency existed or chase of a violent offender was about to occur while delaying the chase to allow the plaintiff to suppose that he was not the object of the officer's attention in order that a high speed chase could be simulated in an attempt to overtake the plaintiff's cycle which had been allowed to open up a substantial

distance between it and said officer's patrol car;
  b. Gave chase to the plaintiff at high speeds in order to induce the plaintiff to violate traffic laws so that an arrest could be made;
  c. Followed a department practice of intentionally refraining from actuating or sounding a siren to induce confusion and to increase the risk of injury to the plaintiff and to create the appearance of an attempt to evade the officer so that more serious charges could be brought against the plaintiff than might otherwise exist, if any did otherwise exist.
  d. Followed a practice of calling upon all vehicles equiped [sic] radios operating on po-

V alleges that Addison had a policy and custom of urging employees like Selke to assist any other police department in making arrests, and that Selke was carrying out this policy when he collided with Benskin.[3]

## II. *Standard of Review*

We cannot sustain defendants' various attacks on the complaint unless it appears beyond doubt that Benskin can prove no set of facts entitling him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). These facts need not be pled in detail, but there must be enough facts alleged to outline the cause of action. *See, e.g., Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). In the context of § 1983, the facts alleged must sketch the outline of a federal constitutional violation. The only constitutional provision alleged in the complaint is the Fourteenth Amendment. No specific clause is mentioned, but we assume Benskin is invoking the Due Process Clause. While it is possible that the facts alleged could amount to violations of other amendments, such as the Fourth, we will only construe the complaint under the Due Process Clause since that is all that is alleged.

## III. *Sufficiency of the Complaint*

There are several issues raised, but all are fairly simple and can be dealt with summarily.

■ A. *Diversity.* Diversity of citizenship is properly alleged. While Benskin lived in Illinois when the accident happened, the complaint alleges that he now lives in Texas. Diversity is determined when the complaint is filed, not when the claim accrues. *See, e.g., Fidelity & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir.1983); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3608 (1984). Thus, defendants' motions are denied to the extent they attack allegations of diversity.[4]

■ , B. *Liability of Villages.* The villages are correct that Counts IV and V must be dismissed because they do not allege enough facts to support an inference that municipal custom or policy was responsible for the alleged constitutional tort. Section 1983 does not allow for vicarious liability of cities. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, cities can be held liable when the unconstitutional action stems from municipal policy, law or custom. *Id.* at 689–90, 98 S.Ct. at 2036–37. But a plaintiff cannot merely use a boilerplate allegation of custom to survive a motion to dismiss. The " 'allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality.' " *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985), *quoting Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981); *see also Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202 (7th Cir.1985). There must be some additional fact or facts alleged that the policy complained of actually exists. *Id.; cf. City of Oklahoma City v. Tuttle*, —— U.S. ——,

lice and civil short wave bands to assist in making arrests for common traffic arrests or mere detention for interrogation on suspicion or for lesser purposes without legal cause while knowing or while the department and its officers should have known that such assistance was not justified in many such situations including the situation complained of.

**3.** Count VI, which is not directly challenged in the motions, alleges a state law claim for "willful and wanton conduct."

**4.** The allegation of jurisdiction is one example of the odd nature of the complaint. Normally in cases brought under § 1983, federal question jurisdiction is invoked under 28 U.S.C. § 1331 and/or 28 U.S.C. § 1343. State law claims generally are considered under the court's pendent jurisdiction, with perhaps an alternative allegation of diversity where appropriate. Not so here. Only diversity jurisdiction is alleged. So we have here an anomaly: a suit whose cause of action is based on § 1983 but whose alleged jurisdiction rests on diversity of citizenship.

105 S.Ct. 2427, 2435–36, ·85 L.Ed.2d 791 (1985) (proof of a single incident of unconstitutional conduct fails to satisfy *Monell* absent proof of relevant municipal policy). As was the case in *Strauss,* the only facts alleged here are those relating to Benskin's arrest and accident. The complaint lacks any other fact which could support a reasonable inference that the incident was other than isolated. Accordingly, the motions to dismiss Counts IV and V must be granted, and the villages must also be dismissed from Count II.[5]

■ C. *Service of Process.* Bensenville moves to dismiss under Fed.R.Civ.P. 12(b)(5), arguing that process was not properly served. Benskin did not address this issue in his brief. The record indicates that Benskin's agent served "Elvira Johnson" with process. However, Rule 4(d)(6) provides that a municipality's chief executive officer or an agent must be served, unless state law allows for another way to do it. Bensenville asserts that Elvira Johnson is neither· its chief executive officer nor an agent authorized to receive process. Benskin does not deny this. In light of Benskin's failure to validate the sufficiency of service, Bensenville's motion to dismiss will be granted.

■ D. *The Claims Against Selke and Schratzmeier.* Defendants are correct that to the extent Count II alleges that they were merely negligent in arresting Benskin, that count fails to state a constitutional claim under the Due Process Clause. *See Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). But Count II alleges much more than that the two officers were negligent, and we are satisfied that it states a claim under the Due Process Clause.

The use of excessive force in effecting an arrest can be analyzed under either the Fourth Amendment or the Due Process Clause. *See Gumz v. Morrissette,* 772 F.2d 1395, 1399 (7th Cir.1985). Since an arrest is a "seizure," the Fourth Amend-

ment regulates how the police may conduct the arrest. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (striking state policy authorizing shooting of fleeing felons, under Fourth Amendment). But as noted earlier, Benskin has confined our inquiry to the Fourteenth Amendment. Under the Due Process Clause, the "primary inquiry in addressing an excessive force claim ... is whether the conduct of state officials was so egregious or intolerable as to shock the conscience of the court and constitute a constitutional violation as opposed to a mere violation of state law." *Gumz,* 772 F.2d at 1400. This question must be resolved on a case-by-case basis, and the Seventh Circuit in *Gumz* held that a three-part test should be used to guide analysis of excessive force issues: the use of force is unconstitutional if it

(1) caused severe injuries,

(2) was grossly disproportionate to the need for action under the circumstances, and

(3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience.

772 F.2d at 1400.

■ We hold that the factual allegations of the complaint satisfy this three-part test. First, Benskin alleges severe, multiple injuries. Second, the use of force alleged was not only grossly disproportionate to the need for action, it was wholly unnecessary. According to the bizarre story told by the complaint, Schratzmeier and Selke used their cars as weapons of intimidation. Assuming the complaint to be true, they could have flagged Benskin down in a normal fashion, but instead deliberately created the high-speed conditions which caused the crash. This conduct, *if proved,* would satisfy the second factor of *Gumz.* Finally, it is reasonable to infer that Benskin can prove that these scare tactics were inspired by malice rather than excess of zeal. This

---

**5.** We therefore need not reach the village's attack on the prayer for punitive damages. However, we do reach that issue below at 10 with respect to the individual defendants.

is not a case where a police officer allegedly had to use some force to make an arrest and got a little carried away. Nor is this a case where an officer had to chase a fleeing suspect at high speeds and negligently caused an accident in the process. This is a case where defendants used their cars to try to scare and confuse a motorcyclist and recklessly, if not intentionally, caused the smash-up. This type of conduct is malicious. In sum, then, Count II of the complaint states a viable claim under the Due Process Clause.

■ Count III, however, must be dismissed. Naming Selke only, it adds no new material facts to Count II, except for an allegation that Selke and Schratzmeier conspired to violate Benskin's constitutional rights. Count III alleges violations of 42 U.S.C. §§ 1981, 1983 and 1985. The § 1981 count must fail because the complaint does not allege any facts which support an inference that defendants were motivated by racial or some other invidious, class-based discrimination. *See, e.g., Lowe v. Letsinger,* 772 F.2d 308, 311 (7th Cir.1986). The same pleading deficiency defeats the § 1985 claim as well. The complaint does not specify which subsection of § 1985 it is invoking, but the only one that seems relevant is § 1985(3).[6] That section requires a racial or other invidious purpose, since it speaks primarily in terms of equal protection. *See Lowe,* 772 F.2d at 310; *Quinones v. Szorc,* 771 F.2d 289, 291 n. 1 (7th Cir.1985). With §§ 1981 and 1985(3) pared

from Count III, it alleges no more than a § 1983 violation on the part of Selke. But Count III alleges no more relevant constitutional violations than does Count II. Since Count III as modified duplicates Count II, it will be dismissed in total.

■ E. *Punitive Damages.* Count II prays for punitive damages from Selke and Schratzmeier. They correctly point out that punitive damages are not available against municipalities sued under § 1983,[7] *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), nor against municipal officials sued in their "official capacities." *See Wolf-Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983) (official capacity suit is merely suit against governmental entity, and damages are recoverable only if they would be recoverable from the entity); *Holly v. City of Naperville,* 571 F.Supp. 668, 673 (N.D. Ill.1983). However, punitive damages may be recovered from officials sued in their "individual capacities" if they acted with reckless or callous disregard of the plaintiff's constitutional rights or if they were motivated by evil motive or intent. *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The complaint does not specify whether the two officers are being sued in their individual or official capacities. Normally plaintiffs sue individual police officers in their individual capacities. This obviates potential Eleventh Amendment problems, *see Owen*

6. That subsection reads:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State, or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

7. Punitive damages may even be recovered from a municipality if it waives its immunity. *See Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985).

*v. Lash*, 682 F.2d 648, 654–56 (7th Cir. 1982), since individual capacity judgments are satisfied from the individual's pocket [8] while official capacity ones are paid directly from the public fisc. *See Kolar*, 756 F.2d at 567 and 569 n. 5. Although Benskin probably meant to pursue an individual capacity suit, the Seventh Circuit has adopted the bright-line rule used by Judge Grady in *Holly v. Naperville, supra.* When a complaint is silent on the issue, we should normally assume defendants are sued in their official capacities only; a complaint should expressly say "individual capacity" when a plaintiff intends to sue a defendant as such. *Kolar*, 756 F.2d at 568–69. Accordingly, we may assume that the individual officers are being sued in their official capacities only, and the prayer for punitive damages in Count II must therefore be stricken.[9]

### III. *Conclusion*

To summarize, Counts III, IV and V are dismissed. The two villages are dismissed from Count II, and the punitive damages prayer is dismissed from that count as well. Bensenville is dismissed from Count VI because of defective service. In other respects the motions to dismiss are denied. The status set for March 7, 1986, is continued until April 1, 1986, at 10:00 a.m., at which time the final pretrial order *must* be filed. It is so ordered.

---

**8.** Of course, through indemnification statutes a judgment against an individual official may ultimately be paid from public funds. *See, e.g.,* Ill.Rev.Stat. ch. 127, ¶ 1302(a) (1983) (state official indemnified); Ill.Rev.Stat. ch. 85, ¶ 9–102 (1983) (local official).

**9.** As *Owen v. Lash* makes clear, Benskin may well have trouble with the Eleventh Amendment if he tries to recover damages under Count II as now pled.