**Dorothy McADAMS, as Administrator of the Estate of Gale Lee Howell, deceased, Plaintiff,**

v.

**SALEM CHILDREN'S HOME, et al., Defendants.**

**No. 87 C 10937.**

United States District Court, N.D. Illinois, E.D.

Oct. 13, 1988.

Judith A. Halprin, Joseph Dombrowski, Judith A. Halprin, Ltd., Chicago, Ill., for plaintiff.

James O'Hagen, Brian Clarke, Eric Samore, Querry & Harrow, Jeffrey W. Finke, Asst. Atty. Gen., Chicago, Ill., for defendants.

---

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff, Dorothy McAdams, brings this damage suit against Defendants, Salem Children's Home ("Salem Home"), Steven Yahnig (Salem's Director), and others under 42 U.S.C. Section 1983. Plaintiff also includes in her complaint pendent state law claims. Defendants, Salem Home and Yahnig, now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b). For the reasons set forth below, the motion is denied.

*The Allegations of the Complaint*

Plaintiff's complaint alleges that she brings this suit as the administrator of the estate of her son, Gale Howell ("Gale"), a minor. Amended Complaint, par. 5. In 1985, Gale, then age 11, was charged with armed robbery and aggravated sexual assault in the Kane County Juvenile Court System.[1] Amended Complaint, par. 10. On September 30, 1985, Steven Strock, an employee of the Kane County Department of Juvenile Court Services ("KCJCS"), was appointed guardian of Gale by order of the Kane County Juvenile Court. Amended Complaint, par. 14. Plaintiff also alleges that Strock and the KCJCS worked jointly with Gordon Johnson, Director of the Department of Children and Family Services ("DCFS"), and Glynne Gervais, Assistant

Guardianship Administrator of DCFS. Amended Complaint par. 16. Thus, Plaintiff alleges that employees of DCFS and KCJCS were responsible for the appropriate placement of Gale Howell while under Strock's guardianship. Pursuant to this responsibility, plaintiff alleges that by court order on September 30, 1985 Gale was placed in Salem Home. Amended Complaint, par. 21.

Plaintiff alleges that DCFS "licensed and/or funded the Salem Home as a facility for the placement of children in its care, custody and control. [Plaintiff further alleges that] DCFS and Salem Home had a contractual relationship in which Salem Home was paid to provide shelter, care, supervision and treatment of children whose care, custody and control had been placed with DCFS and/or agencies with which it worked jointly in the placement of children." Amended Complaint, par. 17.

Plaintiff alleges that prior to being placed in Salem Home, the defendants received "numerous reports of social service investigations, psychological evaluations, diagnoses and prognoses of Gale Howell's condition and needs...." Amended Complaint, par. 18. Plaintiff alleges that these reports informed defendants of the need to place Gale "in a structured atmosphere with intensive supervision...." Amended Complaint, par 19. Plaintiff also alleges that these reports informed defendants that Gale had severe difficulties in relating to authority figures necessitating that his care providers have special training and skill in order to deal with Gale. Amended Complaint, par. 20. As a result of the information in these reports, Plaintiff alleges that prior to placing Gale, the defendants were aware that the staff at Salem Home was inadequately trained to deal with a child like Gale. Amended Complaint par. 21.

In particular, Plaintiff argues that the staff at Salem Home was not sufficiently trained to use physical restraint techniques. Amended Complaint, par. 22. Despite this fact, Plaintiff alleges that DCFS permitted and sanctioned Salem Home's

---

1. The complaint does not state the disposition of these charges. It is, therefore, unclear if these charges were the reason Gale was placed in Salem Home.

use of physical restraint techniques. Amended Complaint, par. 23. In fact, Plaintiff alleges that DCFS personnel introduced and instructed Salem Home personnel on how to administer the baskethold restraint which Plaintiff claims ultimately caused Gale's death. Amended Complaint, par 28 and par. 32.

Plaintiff also states that Steven Yahnig, Director of Salem Home, "sanctioned the use of the baskethold, a physical restraint technique for punitive purposes, contrary to the stated DCFS policy of employing the technique only to gain control of a child who had become physically out of control and presented a physical danger to himself, others or property." Amended Complaint, par. 24. Plaintiff alleges that this was done despite the fact that Salem Home was "provided with official policy guidelines by the DCFS defendants governing the method of employment of the technique and the approved circumstances under which it might be employed." Amended Complaint, par. 28.

Plaintiff states that every time the baskethold was utilized by Salem Home employees Director Yahnig was notified in writing that the measure had been used and why it had been used. Amended Complaint, par. 27. According to Plaintiff, Salem Home also provided regular written reports to DCFS stating "the circumstances in which the technique had been employed, and its results." Amended Complaint, par. 29.

Despite these reports, Plaintiff alleges that DCFS did not stop Salem Home from using the baskethold punitively. Amended Complaint, par. 29. Plaintiff further alleges that staff at the Salem home had complained "that they were inadequately trained and instructed in the employment of the technique, [but that] neither Salem Home, Yanhig nor [DCFS] ... undertook further instruction and training of the Salem Home personnel." Amended Complaint, par. 30. Plaintiff alleges, therefore, that punitive use of the baskethold restraint technique had become the true policy of DCFS at Salem Home. Amended Complaint, par. 26.

Pursuant to this policy, Plaintiff alleges that on August 3, 1986, "defendants Maxwell, Harvey and Elliott [employees of Salem Home] approached Gale Howell for the specific purpose of subjecting him to the baskethold as a punitive measure." Amended Complaint par. 32. Plaintiff states that prior to this time Gale was not behaving in such a manner as would have required the defendants to employ the baskethold pursuant to the stated DCFS policy (i.e. to prevent Gale from hurting himself, others or property). Amended Complaint, par. 32. Plaintiff alleges that on August 3, 1986, as a result of punitive use of the baskethold by Salem Home employees, "Gale Howell died of gastric asphyxiation." Amended complaint, par. 33.

In her four count complaint, plaintiff seeks relief under 42 U.S.C. section 1983 and state law. Count I asserts that state defendants failed "to provide a minimal level of adequate care and treatment for Gale Howell. ..." Amended Complaint par. 34. Plaintiff also asserts that the state defendants failed to monitor Gale's ongoing treatment at Salem Home. Amended Complaint par. 35. Plaintiff states that failure of the state defendants to minimally provide for, and supervise the care received by, Gale violated his constitutional rights, Amended Complaint, par. 34, particularly his substantive due process rights under the Fourth, Fifth and Fourteenth Amendment, and his procedural due process rights under the Fourteenth Amendment. Amended Complaint par. 35. Plaintiff also claims that the insufficient staffing at Salem Home violated Gale's "substantive and due process rights by compelling his placement there without adequate facilities and staff and without adequate monitoring or supervisory action undertaken to see that he was adequately cared for and received the particularized nature and scope of therapy he required." Amended Complaint, par. 35 p. 12.

Count II, III and IV are pendent state law claims. Count II is for wrongful death. Amended Complaint, par. 36. Count III is for negligence. Amended

Complaint, par. 34 & 35. Count IV is for loss of society. Amended Complaint, par. 34 & 35.

### Discussion

In considering Defendant's Motion to Dismiss, the allegations of the complaint are taken as true along with reasonable inferences therefrom in the light most favorable to the Plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), (citations omitted), *cert. denied* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

*Count I, 42 U.S.C. Section 1983 & State Action of Salem Home & Yahnig*

■ Defendants, Salem Home and Yahnig argue in their Motion to Dismiss that they are private, not state, actors and thus are not liable under Section 1983. In order to subject a private individual to suit under Section 1983, there must be state action. *Tunca v. Lutheran General Hospital,* 844 F.2d 411, 414 (7th Cir.1988). Both in Section 1983 and the Fourteenth Amendment contexts, we must determine whether "the alleged infringement of federal rights [may be] fairly attributable to the state?" *Tunca,* 844 F.2d at 414, quoting *Ezpeleta v. Sisters of Mercy Health Corp.,* 800 F.2d 119, 122 (7th Cir.1986).

In order for a private individual's acts to be fairly attributable to the state, two requirements must be analyzed. First, was the deprivation "caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a state actor.... [i.e.] a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

It is clear that extensive regulation alone is insufficient to create state action. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); and *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Rather, there must be " 'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785, quoting *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453. A number of theories have been articulated to show this nexus exists, such as: 1) the public function doctrine where the private actor performs an act which is traditionally and exclusively reserved to the states (eg. elections,[2] company town,[3] and municipal park.[4]), 2) coercion or *significant* overt or covert encouragement by the state (i.e. more than mere approval or acquiescence by the state in a private decision)[5], 3) a conspiracy which exists between the state and the private individual[6] or 4) a symbiotic relationship between the state and the private individual.[7] Determining whether a nexus between the state and a private party exists re-

---

**2.** *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) and *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), *reh'g denied* 345 U.S. 1003, 73 S.Ct. 1128, 97 L.Ed. 1408.

**3.** *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

**4.** *Evans v. Newton,* 382 U.S. 296, 86 S.Ct 486, 15 L.Ed.2d 373 (1966).

**5.** *See Tunca,* 844 F.2d at 414.

**6.** *See Adickes v. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) (alleged conspiracy between Mississippi police and restaurant to deny service to white teacher attempting to eat with her black students before her vagrancy arrest on leaving the restaurant).

**7.** *Burton v. Wilmington Park Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). (private restaurant which refuses to serve blacks leasing from a public garage).

quires a detailed fact inquiry. *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453 quoting *Burton v. Wilmington Park Authority,* 365 U.S. 715, 723, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). We find, that Plaintiff's complaint sufficiently alleges that Salem Home and Yahnig are state actors.

Plaintiff alleges Gale was in the legal custody of defendants. Amended complaint, par. 12. Further, Plaintiff alleges that a "special relationship existed between the defendants and Gale Howell which created an affirmative duty owed by them to him. Both by federal and state statutory framework, the defendants owed this 12 year old boy a duty to provide for him, at a minimum, as a good parent would. [Plaintiff alleges that the failure to so protect Gale] ... violated his [constitutional] rights...." Amended Complaint par 34.

Under Illinois law DCFS is "to provide direct child welfare services when not available through other public or private child care or program facilities." Ill.Rev.Stat. Ch. 23 Section 5005 (1967). DCFS also must accept "children for care and training upon commitment under the 'Juvenile Court Act', or through a voluntary placement agreement with the parent or guardian." *Ibid.* While the state might not constitutionally be required to provide these types of services, Illinois has done so. In this case, Gale was not only in need of direct child welfare, but the Plaintiff alleges that the state affirmatively undertook to provide for Gale as his guardian. Amended complaint, par. 14–16.

Under the Juvenile Court Act effective during the period at issue in this suit, Illinois gave a guardian "the duty and authority, subject to residual parental rights and responsibilities to make important decisions in matters having a permanent effect on the life and development of the minor and to be concerned with his general welfare. It includes.... (c) the rights and responsibilities of legal custody...." Ill.Rev.Stat. Ch. 37 Section 701–11 (1967). " 'Legal Custody' means the relationship created by an order of court which imposes on the custodian the responsibility of physical possession of a minor and the duty to protect, train and discipline him and to provide him

with food, shelter, education and ordinary medical care...." Ill.Rev.Stat. Ch. 37 Section 701–12 (1967).

Plaintiff's complaint plainly states that these responsibilities were placed upon Strock on September 30, 1985. Amended Complaint par. 14. Strock clearly undertook this responsibility, not as a member of the general public, but as an employee of the Kane County Juvenile Court. Amended Complaint, par. 14. Plaintiff alleges that the Kane County Juvenile Court did not act independently but rather worked jointly with DCFS in undertaking its duty to be the guardian of Gale. Amended Complaint par. 16. While the exact method by which these systems operates is not clear from the complaint, we do think it is clear that Plaintiff alleges that Gale was the responsibility of Kane County and DCFS. This is a motion to dismiss, and at this stage these allegations are sufficient to assume that this was true.

█ Under Illinois law, Kane County, DCFS and Struck had a duty to provide for Gale. Plaintiff alleges that these defendants chose to fulfill this duty not by placing Gale in a state home but by contracting with Salem Home to provide this care. If a restaurant leasing space in a public garage is sufficiently entangled with the state to be considered a state actor, surely an individual contracting with the state to fulfill the state's duty to provide for a child is sufficiently connected to the state to be a state actor when the care the child has received is at issue.

In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court determined that involuntary commitment of a mentally retarded individual to a state institution does not extinguish this persons right to adequate food, shelter, clothing, medical care, personal security and freedom from bodily restraint. *Youngberg,* 457 U.S. at 315 & 316, 102 S.Ct. at 2457 & 2458. Plaintiff's complaint alleges a special relationship between Gale and the County and State in this case. Plaintiff alleges that this special relationship entitled Gale to minimal care by his public guardians. Amended Com-

plaint, par. 34. We refuse to find that the fact that the state and county here chose to use contracts rather than state homes to fulfill their duty to juveniles would make *Youngberg* inapplicable. Further, if this protection applies to the mentally retarded and prisoners [8], we find it should apply as well to juveniles whom a court orders are the responsibility of the county and state.

Defendants draw parallels between Salem Home and the children's institutions in *Malachowski v. City of Keene,* 787 F.2d 704 (1st Cir.1986), *cert. denied* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986), *reh'g denied* 479 U.S. 1022, 107 S.Ct. 681, 93 L.Ed.2d 731 (1986) and *Player v. State of Alabama,* 400 F.Supp. 249 (1975) *aff'd* 536 F.2d 1385 (5th Cir.1976). These cases are distinguishable from our case however. In *Malachowski,* the parents of a girl who had been taken from them by the State sued under Section 1983 for a deprivation of their constitutional rights. A private party, Youth Services, Inc. ("YSI"), was included in the suit for allegedly making defamatory statements against the parents and for joining in the conspiracy to take custody of their daughter from them. YSI was "a private, non-profit organization, [which] made available foster homes for state agencies and provided recommendations to the juvenile court with respect to child placement." *Malachowski,* 787 F.2d at 710. The court found the absence of state action because it was the state court not YSI who made decisions about the placement of the Plaintiff's child, because there were no allegations in the complaint that YSI was regulated by, funded by or under contract with the state, and because child care and placement is not traditionally the exclusive prerogative of the state. *Malachowski,* 787 F.2d at 710 & 711.

Unlike *Malachowski,* there are allegations in Plaintiff's complaint that Salem Home is under contract with, licensed and/or funded by the state. Furthermore, Plaintiff here challenges the treatment her son received as a ward of the state not his removal from her custody and placement in the custody of the state. The facts of *Malachowski* are critically different from the facts alleged by Plaintiff, and hence Defendant's comparisons between Salem Home and YSI are misplaced.

In *Player v. State of Alabama,* 400 F.Supp. 249 (M.D.Ala.1975), a class action was brought on behalf of black children alleging that Alabama utilized a segregated referral system. The court found that the state had a duty under state law to provide for these children. The fact that the state had done so by contract did not relieve the state of assuring that its programs were nondiscriminatory in their placement of black children as compared to white children. The court found that Alabama was legally required to assure itself that the individuals they contracted with were in fact not discriminating. *Player,* 400 F.Supp. at 257 & 258.

The court also found that even though some of the children's homes which were being sued had accepted white children while refusing black children, these homes were not state actors. Despite the fact that a substantial exchange of benefits flowed between the homes and the state, the homes were not state actors because they did not fulfill a public function and because the homes were capable of existing separately from the state and because the state had not "sanctioned, fostered, encouraged or identified itself with the discriminatory admissions policies of the homes." *Player,* 400 F.Supp. at 262 & 263. Our case does not, however, deal with the refusal of foster homes to accept children because of discrimination. It deals with the duty of the state and county to provide adequately for the juveniles under its care. Furthermore, unlike in *Player,* Plaintiff here also alleges that the state introduced the baskethold restraint [9] and sanctioned

---

8. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *reh'g denied* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979) and *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979).

9. Amended Complaint, par. 28.

its punitive use [10] by Salem Home despite the stated DCFS policy to only use the baslethold to temporarily restrain a violent child.[11] For the above reasons, we find that Salem Home and Yahnig are state actors for purposes of this Section 1983 suit.

### Count II, Section 1983

Defendants also claim that plaintiff has failed to state a cause of action under Section 1983 because there is no alleged constitutional violation by Salem Home and Yanig as their is no policy involved in this case which has caused the alleged constitutional violation.

### Existence of a policy

In order to withstand the Motion to Dismiss, Plaintiff cannot simply rely on a vicariously liability theory to hold either Salem Home or Yahnig. In order to hold a private defendant there must be "an 'impermissible policy' or 'constitutionally forbidden' rule or procedure of [the private defendant]." *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982).

Although Plaintiff's Amended complaint is not crystal clear, he appears to be arguing that Salem Home and Director Yahnig are to be held directly liable for allowing the continued punitive use of a baskethold by individuals who were not adequately trained to use it. Amended Complaint, par. 27. It is this policy of punitive use of the baskethold that the Plaintiff alleges constitutes an impermissible policy or constitutionally forbidden rule. Amended complaint, par. 32. It was this policy which Plaintiff alleges caused Gale's death. Amended Complaint, par. 32.

In Section 1983 a Plaintiff cannot use the single incident which he was involved in to infer that a custom or policy exists. Furthermore, mere allegations that a policy exists without factual support are not sufficient. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). In *Strauss*, the Plaintiff had merely stated that the City had a custom and practice. He "pled *no* facts to support this charge,

apart from those surrounding his own unlawful arrest and physical injury." *Strauss*, 760 F.2d at 766 (emphasis supplied).

Plaintiff here has pled facts besides her son's injury which assert that the policy does exist. Plaintiff states that the staff of Salem Home complained that they were inadequately trained to perform the baskethold. Amended Complaint, par. 30. Plaintiff states that Defendant Yahnig sanctioned the punitive use of the baskethold. Amended Complaint, par. 24. Plaintiff states that the Defendants knew that Salem Home punitively used the baskethold before Gale was placed at Salem Home. par. 25. Plaintiff states that Yahnig was informed in writing each time the baskethold was used punitively. Amended Complaint, par. 27. Plaintiff also states that Salem Home's reports to DCFS reflect the use of the baskethold punitively. On a Motion to Dismiss we must accept these allegations as true. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). If true, these facts would show that a policy existed at Salem Home. We find that Plaintiff has stated sufficient facts of the existence of the punitive use of the baskethold policy to survive a Motion to Dismiss.

Plaintiff asserts that this policy of punitive use of the baskethold is impermissible because it was contrary to the stated policy of DCFS which had determined that the baskethold was to be used "only to gain control of a child who had become physically out of control and presented a danger to himself, others or property." Amended complaint, par. 24. Plaintiff's allegations imply that although a policy maker might use the baskethold as a last resort, the balancing of the interests of the care provider in obedience and order and the child in his safety do not allow the care provider to utilize the baskethold to punish a child. Thus, Plaintiff infers that the punitive use of the baskethold violated Gale's constitutional rights.

---

**10.** Amended Complaint, par. 25 & 26.

**11.** Amended Complaint, par. 24.

*Constitutional provisions at issue*

Defendant also argues that it is unable to tell the particular constitutional provisions Plaintiff is relying on to prove that Gale's constitutional rights were violated. While Plaintiff's complaint is again not crystal clear, it also seems in context comprehensible. Plaintiff states that "Salem Home's insufficient staffing violated his substantive and due process rights...." Amended Complaint, pg. 12, par. 35. Earlier in paragraph Plaintiff states that the state defendants acted in a way that "is shocking to the conscience of a civilized society and violative of his substantive due process rights as protected by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution." Amended Complaint, par 35. It seems clear in this context that Plaintiff is contending that Gale's substantive and procedural due process rights under the above constitutional amendments were violated by Salem Home & Yahnig.

*Count III, Negligence*

Defendant also requests that we dismiss Count III as it is "unclear what legal theory Count III, which lacks a caption, heading and Roman numeral, is based on." Defendant's Motion to Dismiss, IIA, p. 5. Plaintiff incorporates the factual support for her Section 1983 action which alleges a duty. Paragraph 34 of the Amended complaint includes a list of ten ways that the duty was breached, five of which relate to Salem Home and Yahnig. Amended Complaint par 34. The Plaintiff then alleges that plaintiff (by which we assume she means Gale) suffered injury and finally death as "a direct and proximate result of the above mentioned acts and omissions of the defendants...." Amended Complaint Par 35. It is clear that this is a state law negligence count which has been adequately pled. Motion to Dismiss Count III is, therefore, denied.

*Count IV, Loss of Society*

Defendants also request that Count IV be dismissed. It appears that Plaintiff intended to incorporate at least par. 1–34 of Count III, if not par. 1–35 of Count III, into Count IV, but didn't do so. Plaintiff is hereby given leave to amend Count IV.