Bernard L. **PACKETT**, Appellant,

v.

Donald **STENBERG**, State of Nebraska, Appellees.

Steven J. **MOELLER**, Appellant,

v.

Donald **STENBERG**, individually and in his official capacity as Attorney General of the State of Nebraska, State of Nebraska, Appellees.

Nos. 91–2892, 91–3206.

United States Court of Appeals, Eighth Circuit.

Submitted March 26, 1992.

Decided July 16, 1992.

Rehearing and Rehearing En Banc Denied Aug. 20, 1992.

---

Thom K. Cope, Lincoln, Neb., argued, for appellant Bernard Packett.

Vincent M. Powers, Lincoln, Neb., argued, for Steven Moeller.

Roger P. Cox, Lincoln, Neb., argued, for appellees Stenberg and State of Neb.

Before FAGG, BOWMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Packett and Moeller appeal the dismissals of their 42 U.S.C. § 1983 actions. They were terminated from employment by a newly-elected Attorney General for the State of Nebraska, Donald Stenberg. Packett asserts a deprivation of due process under the Fourteenth Amendment, and Moeller asserts a deprivation of his rights to free speech and association under the First Amendment. The district court

724

granted ·summary judgment in favor of Stenberg. We affirm.

## I. BACKGROUND

Bernard Packett had been an Assistant Attorney General for the State of Nebraska for over thirty years. Steven Moeller had been an Assistant Attorney General for five years. They were performing their jobs satisfactorily. Steven Moeller vocally supported Stenberg's opponent, the incumbent deputy attorney general, in a hotly contested race. Shortly after Donald Stenberg was sworn in as Attorney General, Packett and Moeller, among others, were terminated.

The former Attorney General had implemented written personnel policies which stated that personnel could be terminated only for just cause and would be entitled to notice and a hearing prior to termination. Stenberg rescinded those policies after he became Attorney General. There was some evidence that the Attorney General's office, under several former Attorneys General, had a longstanding unwritten custom of termination only for just cause. There was also evidence that the written policy by Stenberg's predecessor was finalized between the time of Stenberg's election and his taking office.

In granting motions for summary judgment against Packett and Moeller, the district court held that Packett and Moeller did not possess a property interest in continued employment as Assistant Attorneys General and thus their discharge without cause was not a violation of the Fourteenth Amendment. With respect to the claim that Stenberg and the state violated their rights to free speech and association under the First Amendment, the court held that Packett and Moeller held policymaking positions and that patronage dismissals or consideration of party affiliation is not unconstitutional where the dismissed employee holds such a position. The court also held that Stenberg was entitled to qualified immunity for his actions in any event.

On appeal, Packett asserts that the district court erred in granting summary judgment to Stenberg for the reason that material issues of fact exist. He also assigns error to the district court's holding that he had no property interest in his employment. He further asserts that Stenberg is not entitled to qualified immunity and also asserts that the district court erred in denying his motion to certify state law questions to the Nebraska Supreme Court. Moeller asserts that because a Nebraska statute protects political activities, the district court erred in holding that the politically-motivated firing of a policymaker is not unconstitutional.[1]

## II. DISCUSSION

We use the same standard as the trial court in reviewing the entry of summary judgment. *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981). Summary judgment may be granted where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Additionally, all facts must be viewed in the light most favorable to the party opposing the motion and the opposing party must be given the benefit of all reasonable inferences. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir.1980).

### A. Packett

Packett first asserts that issues of material fact exist. The only conflicting evidence in the case involves the historical policies and customs of the Attorney General's office. This conflict is irrelevant to our holding. Because we find that Stenberg was entitled to rescind the personnel policies, the prior policies are of no consequence to resolution of the case.

Packett next asserts a property interest in continued employment. To have a property interest in employment a person must have a legitimate claim of entitlement. *Board of Regents v. Roth*, 408 U.S.

1. Packett does not appeal the dismissal of his First Amendment claim and Moeller does not appeal the dismissal of his due process claim.

564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The existence of a property interest must be determined with reference to state law. *Weeks v. State Bd. of Educ.,* 204 Neb. 659, 663, 284 N.W.2d 843 (1979). Typically, this interest arises from statutory or contractual limitations on the employer's ability to terminate an employee. *Blankenbaker v. McCook Pub. Power Dist.,* 940 F.2d 384, 385 (8th Cir.1991). A property interest in employment can also be created by implied contract, arising out of customs, practices and *de facto* policies. *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). When such a property interest exists, the employee is entitled to a hearing or some related form of due process prior to termination. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Packett claims that his protected property interest arises both from the written personnel handbook and the customs of the Attorney General's office.

There is no dispute that Packett had no written contract of employment with the Attorney General's office and that any policies, rules or regulations contained in the handbook or implied contractual terms created by virtue of customs of the Attorney General's office were expressly rescinded when Stenberg took office. The issue, then, is whether Stenberg and the State of Nebraska are bound by any agreements between Stenberg's predecessor and his employees so as to give the employees a protected property interest in continued employment. We find that the United States Constitution and the Constitution and statutes of Nebraska support Stenberg's right to terminate at will.

State employees in Nebraska are arguably granted a property interest in their employment by the state personnel system, Neb.Rev.Stat. § 81–1301, et seq. (Reissue 1987) (setting forth procedures for selection, compensation, grievances, etc. of state employees). *See Hill v. Gerber,* 217 Neb. 670, 673, 350 N.W.2d 545 (1984) (impliedly

recognizing a property interest in public employment under the Nebraska Merit System). All personnel of the office of the Attorney General, however, are exempted from the state personnel system. Neb. Rev.Stat. § 81–1316(1)(e) (Reissue 1987). Moreover, the Nebraska Constitution provides that "the heads of the various executive or civil departments shall have power to appoint and remove all subordinate employees in their respective departments." Neb. Const. art. IV, § 1.

The apparent import and rationale of the Constitution and statutes is to allow certain elected officials to recruit, hire and supervise critical policymaking personnel without restrictions. *See e.g.,* Neb.Rev. Stat. § 81–1316(2) (providing for a number of "noncovered positions" in each government department). Because limitations on an Attorney General's right to terminate at will are not authorized by Nebraska law, a successor Attorney General and the State of Nebraska cannot be bound by any rules, regulations, or customs of a former Attorney General to that effect.[2] Accordingly, such policies, if valid at all, cannot extend beyond the former Attorney General's term of office. Merely because some prior officeholder has maintained the customs of a predecessor does not make such acts mandatory. We find that Stenberg had legal authority to hire and fire personnel and correspondingly, to revoke any personnel policies of an earlier vintage. To hold otherwise would prevent an incoming elected official from assembling a work-force able to willingly carry out his mandates and could deny a newly elected official the opportunity to assess the competence and loyalty of his underlings.

Packett argues that since he was appointed prior to the enactment of the statutory exemption to the state personnel scheme, he acquired a property interest which cannot now be taken away without due process. Packett commenced employment with the Attorney General's office in

---

2. We do not address the issue of whether an Attorney General is authorized to implement such policies during his own tenure.

1959. The statute creating the state personnel system was enacted in 1967. 1967 Neb. Laws 1885. At that time, only the Governor, the Attorney General and several other executive officers were exempted from its coverage. *Id.* at 1896–97. The statute was amended in 1969 to exempt the office personnel of those executive officers. 1969 Neb. Laws 3025. Consequently, Packett was covered by the personnel system for 2 years. He argues that he was thus "grandfathered in" before the enactment of the exemption.

■■■ Packett's contention is without merit. A property interest in continued employment is in the nature of a statutory entitlement. *See, e.g., Atkins v. Parker*, 472 U.S. 115, 128, 105 S.Ct. 2520, 2528, 86 L.Ed.2d 81 (1985) (holding food stamp benefits are property protected by the Due Process Clause). The legislature that creates a statutory entitlement (or other property interest) is not precluded from altering or terminating the entitlement by a later enactment. *Gattis v. Gravett*, 806 F.2d 778, 780 (8th Cir.1986). While the legislative alteration or elimination of a previously conferred property interest may be a deprivation, the legislative process itself provides citizens with all the process they are due. *Id.* at 781. Thus, "the legislature which creates a property interest may rescind it, whether the legislative body is federal or state and whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections". *Id.* Accordingly, Packett's property interest, if it ever existed, was extinguished by the enactment of the statutory exemption in 1969.

Packett next asserts that the district court erred in granting qualified immunity to Stenberg. Because we find no constitutional infringement, we need not address the issue. The assertion of a violation of a constitutional right is a threshold issue. *See Siegert v. Gilley*, —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Cross v. City of Des Moines*, 965 F.2d 629, 631 (8th Cir.1992) (a court must first determine whether the plaintiff has asserted the violation of a constitutional right).

■■■ Packett finally asserts that the district court erred in refusing to certify issues to the Nebraska Supreme Court. This is a matter addressed to the discretion of the district court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). We find no abuse of discretion here.

B. Moeller

■■■ Moeller asserts error in the district court's finding that his First Amendment rights to free speech and association had not been infringed. The practice of patronage dismissals clearly infringes First Amendment interests unless dismissals are limited to employees in policymaking positions. *Elrod v. Burns*, 427 U.S. 347, 360, 367, 96 S.Ct. 2673, 2683, 2686, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). Moeller does not dispute the district court's finding that he was in a policymaking position. He argues, rather, that he is protected from termination by a Nebraska statute which provides that "no employee of the state ... shall be prohibited from participating in political activities." Neb.Rev.Stat. § 20–160 (Reissue 1987). This is purely a question of state law. Accordingly, we find that we lack jurisdiction to answer the question.

The issue was raised by Moeller in district court but was not addressed by the district court. We presume that the district court properly declined to exercise supplemental jurisdiction over the claim.

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (West Supp.1991). A court "may decline to exercise supplemental jurisdiction" if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (West Supp.1991). The present action clearly fits within subsection (c)(3) above. Accordingly, this court lacks jurisdiction to consider the issue.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.