Scott L. TINIUS, Plaintiff,

v.

CARROLL COUNTY SHERIFF DEPARTMENT; Carroll County Sheriff; Doug Bass, individually and in his official capacity; John Doe Deputies, individually and in their official capacity; St. Anthony Regional Hospital Auxiliary, Inc.; Erin Klekot; David McCoy; Tammy Roetman; Cherokee Mental Health Institute; and, G. Skorey, Defendants.

No. C03–3001–MWB.

United States District Court,
N.D. Iowa,
Central Division.

April 7, 2003.

J. Barton Goplerud, Ryan Edward Weese, Hudson, Mallaney & Shindler, PC, Des Moines, IA, for Plaintiff.

William L. Dawe, III, Hopkins & Huebner, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS CHEROKEE MENTAL HEALTH INSTITUTE AND SKOREY'S MOTION TO DISMISS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND ................................973
    A.  Procedural Background ....................................973
    B.  Factual Background .......................................974

II.  LEGAL ANALYSIS ..............................................975
    A.  Standards For Rule 12(b)(6) Motions To Dismiss ...........975
    B.  Analysis Of Claims .......................................976
        1.  Supplemental Jurisdiction ............................976
        2.  Eleventh Amendment ..................................978
            a.  The constitutional bar ..........................978
            b.  Suit against the "state" ........................979
            c.  Eleventh Amendment immunity and exceptions to it .....981
                i.  Congressional abrogation .................981
                ii.  State waiver ............................982
                iii.  The nature of the waiver ...............982
                iv.  Failure to meet the "stringent" standard ....982
                v.  Express waiver .........................983
            d.  Waiver in this case .............................984
            e.  Suit against defendants in their individual capacities .....985

III.  CONCLUSION .................................................987

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

Plaintiff Scott L. Tinius filed this lawsuit on January 2, 2003, against various state and county officials and employees. At the center of this lawsuit is Tinius's continued detention by various defendants following his being stopped by Carroll County Deputies. Plaintiff Tinius filed an amended complaint in this lawsuit on January 24, 2003. In Count I of his amended

complaint, Tinius alleges that defendants Carroll County Sheriff Department, Carroll County Sheriff, Doug Bass and John Doe Deputies ("The Sheriff Defendants") violated 42 U.S.C. § 1983 by violating Tinius's rights to substantive due process of law by unlawfully detaining him. In Count II, Tinius alleges that the Sheriff Defendants violated 42 U.S.C. § 1983 by violating Tinius's rights under the Fourth Amendment to be free from unlawful seizures by unlawfully detaining him. In Count III, Tinius alleges a claim for false imprisonment against all named defendants. In Count IV, Tinius alleges a claim for assault and/or battery against all named defendants. In Count V, Tinius alleges a claim for intentional infliction of emotional distress against all named defendants. In Count VI, Tinius alleges an invasion of privacy claim against all named defendants. In Count VII, Tinius alleges a negligence claim against all named defendants. Tinius contends that the defendants owed a duty to him to protect his constitutional rights which they breached by unlawfully detaining him and subjecting him to unwanted physical intrusion.

Defendants Cherokee Mental Health Institute and Dr. Skorey have moved to dismiss Counts III, IV, V, VI, and VII of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, these defendants contend that these is no claim against these defendants to which supplemental jurisdiction may attach. These defendants also assert that Tinius's claims against them are barred by the Eleventh Amendment. These defendants further contend that Counts III, IV, V, VI and VII are barred by the Iowa Tort Claims Act. Finally, these defendants contend that any tort claims against them for punitive damages are barred by Iowa law. Plaintiff Tinius filed a timely response to defendants' motion to dismiss.

On April 2, 2003, the court heard telephonic oral arguments on defendants Cherokee Mental Health Institute and Skorey's Motion To Dismiss. Plaintiff Tinius was represented by Ryan E. Weese of Hudson, Mallaney & Shindler, P.C., Des Moines, Iowa. Defendants Cherokee Mental Health Institute and Skorey were represented by Deputy Attorney General of Iowa Gordon E. Allen and Assistant Attorney General Elise Pippin, Des Moines, Iowa.

Before turning to a legal analysis of the motion to dismiss, the court must first identify the standards for disposition of a motion to dismiss, as well as the factual background of this case as set forth in the amended complaint.

### B. Factual Background

The factual background for disposition of these motions is based entirely on the facts as alleged in Tinius's January 24, 2003, amended complaint. According to the amended complaint, on January 3, 2001, plaintiff Tinius was driving through Carroll County, Iowa, when his vehicle ran out of gas. Defendants John Doe Deputies ("the Deputies"), who were employees of the Carroll County Sheriff's Department, stopped Tinius on the side of the road and transported him against his consent to defendant St. Anthony Regional Hospital Auxiliary, Inc. ("the Hospital") in Carroll, Iowa. The Deputies detained Tinius at the Hospital.

Defendants Erin Klekot, David McCoy and Tammy Roetman are all employees of the Hospital. Defendants Klekot, McCoy and Roetman treated Tinius during his detention at the Hospital and assisted in his confinement. The Deputies requested that Tinius submit to an urine analysis by urinating into a cup. Tinius attempted to comply with the request for a urine sample but was unable to urinate due to the number of people in the room who were ob-

serving him. The Deputies tackled Tinius, shackled him to a hospital bed where Tinius was forced to undergo the insertion of a catheter into his penis by defendants Klekot, McCoy, and Roetman. The Deputies failed to place Tinius under arrest, advise him of his constitutional rights, or inform him that he was a suspect in any criminal matter.

The Deputies transported Tinius to Defendant Cherokee Mental Health Institute where he was placed under the care of defendant Richard Joseph Skorey, an employee of the Cherokee Mental Health Institute. The Deputies eventually returned Tinius to Carroll County to appear in court. The court ordered Tinius's release from custody.

## II.  LEGAL ANALYSIS

### A.  Standards For Rule 12(b)(6) Motions To Dismiss

A motion to dismiss may be made, *inter alia,* for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. FED. R. CIV. P. 12(b).[1]  Such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Doe v. Norwest Bank Minnesota, N.A.,* 107 F.3d 1297, 1303–04 (8th Cir.1997) ("In considering a motion to dismiss, we assume all facts in the complaint are true, construe the complaint in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts

---

1.  However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6); *see also Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996) (because the district court relied on matters outside the complaint in ruling on a Rule 12(b)(6) motion, "the district court had to treat the [defendant's] motion to dismiss as a motion for summary judgment and apply the relevant standards for summary judgment," and further noting that "[t]he standards for dismissing a complaint under Rule 12(b)(6) are substantially different" from those applicable to a Rule 56 summary judgment motion; therefore it was inappropriate for the district court to fail to specify whether it was disposing of an issue according to summary judgment or Rule 12(b)(6) standards). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.* No other materials have been offered in support of the motion to dismiss in this case. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

which would entitle the plaintiff to relief,' " quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir.1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true."); *First Commercial Trust Co., N.A. v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley*, 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Doe*, 107 F.3d at 1304 (dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief,' " quoting *Coleman*, 40 F.3d at 258); *WMX Techs., Inc.*, 105 F.3d at 1198 ("Dismissal should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle relief," citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (internal quotations omitted).

### B. Analysis Of Claims

### 1. Supplemental Jurisdiction

■ Defendants Skorey and Cherokee Mental Health Institute seek dismissal of the claims against them on the ground that no claim has been filed against them upon which to base supplemental jurisdiction. Plaintiff Tinius counters that his claims all arise from a common nucleus of operative facts, and thus can and should reasonably be tried together.

■ In this case, Tinius filed his lawsuit suit under 42 U.S.C. § 1983 and based his complaint on constitutional law. Thus, fa-

cially, this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1343(a)(3) and (4), which provide that federal district courts have original jurisdiction over all suits brought pursuant to section 1983, and pursuant to 28 U.S.C. § 1331, which provides that federal district courts have jurisdiction over all matters which raise issues of federal statutory and constitutional law. Thus, the court must determine whether it has supplemental jurisdiction over the state law claims against defendants Skorey and Cherokee Mental Health Institute under 28 U.S.C. § 1367(a), which confers "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The facts involved in the state claim need only be loosely connected to the federal claim in order to satisfy the common nucleus of operative fact requirement. *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir.1995); *accord Channell v. Citicorp,* 89 F.3d 379, 385 (7th Cir.1996).[2]

The statute defining the supplemental jurisdiction of the federal courts provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Eighth Circuit Court of Appeals has observed that the word "shall" in the phrase "shall have supplemental jurisdiction" "is a mandatory command." *McLaurin v. Prater,* 30 F.3d

982, 984 (8th Cir.1994). The court pointed out further that:

> Congress has directed that federal district courts 'shall' have jurisdiction in both 28 U.S.C. § 1331 (1988) (federal question jurisdiction) and 28 U.S.C. § 1332 (1988) (diversity jurisdiction), and the accepted import of the terms is that federal courts must accept and cannot reject jurisdiction in such cases.

*McLaurin,* 30 F.3d at 984–85 (citing *McCarthy v. Madigan,* 503 U.S. 140, 145–47, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), and *Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909)).

There are exceptions to this mandate, however, and some of those exceptions are cast in discretionary terms. *Id.* at 985 (citing 28 U.S.C. §§ 1367(b) and (c)). A court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). This subsection gives a court the discretion to reject jurisdiction over supplemental claims, "but only to a point." *McLaurin,* 30 F.3d at 985. "The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein." *Id.* Thus, where the case clearly fits within one of the subsections listed

---

**2.** Here, defendants fail to assert that the state claims against them are not sufficiently connected to the federal claims to satisfy the common nucleus of operative fact requirement.

above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg,* 969 F.2d 721, 726–27 (8th Cir. 1992); *see also O'Connor v. State of Nev.,* 27 F.3d 357, 362 (9th Cir.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995); *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1285 n. 14 (3d Cir.1993); *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 65–66, n. 3 (2d Cir.1991); *Carroll v. Borough of State College,* 854 F.Supp. 1184, 1200 (M.D.Pa.1994), *aff'd mem.,* 47 F.3d 1160 (3d Cir.1995). The Ninth Circuit Court of Appeals has counseled that, once one of the grounds listed in § 1367(c) is present, "the court should consider whether the exercise of jurisdiction advances 'the values of economy, convenience, fairness, and comity.' " *Allen v. City of Los Angeles,* 92 F.3d 842, 846 (9th Cir.1996) (quoting *Executive Software v. United States Dist. Court,* 24 F.3d 1545, 1557 (9th Cir.1994)), *overruled in part, Acri v. Varian Assocs., Inc.,* 114 F.3d 999 (9th Cir.1997) (*en banc* ). However, "in the absence of the circumstances described in subsections (b) and (c), § 1367(a) requires the district court to accept supplemental jurisdiction over the state-law claims [the plaintiff] has raised in [the] case." *McLaurin,* 30 F.3d at 985.

Here, defendants have not established that any of the grounds listed in § 1367(c) are present. Therefore, the court concludes that it has supplemental jurisdiction over the pendent state law claims against defendants Skorey and Cherokee Mental Health Institute provided that those claims are not subject to Eleventh Amendment immunity. However, as the Supreme Court has held, " § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 541, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Therefore, the court turns to defendants Skorey and Cherokee Mental Health Institute's contention that the claims against

them must be dismissed on the ground that the claims are all barred under the Eleventh Amendment to the United States Constitution.

### 2. Eleventh Amendment

### a. The constitutional bar

The Eleventh Amendment to the United States Constitution provides as follows:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI. The Eleventh Amendment, as interpreted by the Supreme Court, is born of the recognition of the "vital role of the doctrine of sovereign immunity in our federal system":

> A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. As Justice Marshall well has noted, "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered to be appropriate in a case such as this." *Employees v. Missouri Dept. of Public Health and Welfare,* 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (concurring in result). Accordingly, in deciding this case we must be guided by "[t]he principles of federalism that inform Eleventh Amendment doctrine." *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (footnotes omitted; em-

phasis in the original). The Eighth Circuit Court of Appeals has observed,

> Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by nonresidents, an early case established that the Eleventh Amendment also prohibits suits against a state by that state's residents. *Hans v. Louisiana*, 134 U.S. 1, 15–16, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313–14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. *Monaco v. Mississippi*, 292 U.S. 313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1141 (8th Cir.1974).

*Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 504–05 (8th Cir.1995) (footnote omitted); *see also Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir.2000) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought."); *Williams v. Missouri*, 973 F.2d 599, 599–600 (8th Cir.1992) ("The Eleventh Amendment bars suits against a State by citizens of that same State in federal court," citing *Papasan v. Allain*, 478 U.S.

265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Although the bar of the Eleventh Amendment to suits against the state itself " 'exists whether the relief sought is legal or equitable,' " *Williams*, 973 F.2d at 600 (quoting *Papasan*, 478 U.S. at 276, 106 S.Ct. 2932), the Eighth Circuit Court of Appeals has noted that "[o]f course, legal fictions have also eroded Eleventh Amendment immunity by, among other things, permitting suits against state officials for injunctive and prospective relief." *Thomas*, 50 F.3d at 505 (citing *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); *see also Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir.1988) (recognizing the exception for suits against state officials for injunctive relief, citing *Pennhurst*, 465 U.S. at 104, 104 S.Ct. 900, and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and explaining "that this exception was based on the theory that because a state is without power to authorize a state official to act in violation of federal law, any state official taking such actions is acting beyond his official authority and is thereby 'stripped of his official or representative character,' " quoting *Pennhurst*, 465 U.S. at 104, 104 S.Ct. 900).[3]

### b. Suit against the "state"

In *Thomas*, the Eighth Circuit Court of Appeals also provided an outline of the analysis to be used in interpreting the scope of Eleventh Amendment immunity:

> Given the nature of Eleventh Amendment jurisprudence, we reject a "plain words" interpretation of the Eleventh Amendment. . . .

---

**3.** In *Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that Eleventh Amendment immu-

nity was not available to state officials in suits seeking prospective injunctive relief for violations of federal law.

Rather than look to the Amendment's literal terms, we will more generally examine Eleventh Amendment jurisprudence to determine precisely what qualifies as a suit against the state. " 'What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of Justice.' " *Missouri v. Fiske,* 290 U.S. 18, 26, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (quoting *Cohens v. Virginia,* 6 Wheat. 264, 407, 5 L.Ed. 257 (1821)). A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the

effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908–09 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

*Thomas,* 50 F.3d at 505 (footnotes omitted). In the present case, the court concludes that the State of Iowa has the right to assert Eleventh Amendment immunity.[4] It is also readily apparent, applying the standards stated in *Thomas,* this action is a "suit" within the meaning of the Eleventh Amendment. *Thomas,* 50 F.3d at 505. Tinius is prosecuting a claim in this court of justice, *id.* (citing *Fiske,* 290 U.S. at 26, 54 S.Ct. 18, in turn citing *Cohens,* 6 Wheat. at 407, 5 L.Ed. 257), and a judg-

---

**4.** Plaintiff Tinius argues that defendant Cherokee Mental Health Institute should be treated as a municipality and should therefore be subject to suit without consideration of sovereign immunity. The Eleventh Amendment extends to state agencies and departments and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 123–24, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that relief against county and state officers was barred by the Eleventh Amendment because the state funded and cooperated in operating the county program at issue). However, the Eleventh Amendment generally does not "extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Alden v. Maine,* 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The issue here thus turns on whether the Cherokee Mental Health Institute is to be treated as an arm of the State of Iowa partaking of the State of Iowa's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law. *Mount Healthy,* 429 U.S. at 280, 97 S.Ct. 568. Following its decision in *Mount Healthy,* in *Re-*

*gents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), the Supreme Court stated,

> Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character.

*Regents of the Univ. of Calif.,* 519 U.S. at 430 n. 5. The Cherokee Mental Health Institute is designated as one of four "state hospital[s] for persons with mental illness..." IOWA CODE 226.1(1). The Iowa Department of Human Services is responsible for the administration of programs regarding the "care and treatment of persons with mental illness or mental retardation, and other related programs as provided by law." IOWA CODE 217.1. The director of the Iowa Human Services Department is responsible for the control, management, direction, and operation of the Cherokee Mental Health Institute. IOWA CODE 218.1. The court concludes that for Eleventh Amendment purposes, the Cherokee Mental Health Institute must be considered an arm of the State of Iowa.

ment on his claims would indeed "expend itself on the public treasury or domain, or interfere with the public administration,' or ... the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Thomas,* 50 F.3d at 505 (quoting *Pennhurst State Sch. & Hosp.,* 465 U.S. at 101 n. 11, 104 S.Ct. 900, in turn quoting *Dugan,* 372 U.S. at 620, 83 S.Ct. 999). The court must therefore consider whether the claims against these defendants are barred by the Eleventh Amendment.

### c. *Eleventh Amendment immunity and exceptions to it*

■ "When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists." *Barnes v. Missouri,* 960 F.2d 63, 64 (8th Cir.1992); *see also Egerdahl; Williams,* 973 F.2d at 600 (quoting *Barnes* for this proposition). Those two exceptions are "congressional abrogation" and "state waiver." *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir.1995); *Williams,* 973 F.2d at 600; *Barnes,* 960 F.2d at 64.

■ *i. Congressional abrogation.* As to congressional abrogation, in *Pennhurst,* the Supreme Court concluded that "Congress has power with respect to rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900; *see also Egerdahl,* 72 F.3d at 619 ("Congress may pass legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment to

override states' Eleventh Amendment Immunity,") citing *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–23, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), and *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *Glick,* 855 F.2d at 540 (quoting *Pennhurst* ). This exception applies only when there is "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several states.'" *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900; *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (" 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute,'" quoting *Dellmuth v. Muth,* 491 U.S. 223, 229–30, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)); *accord Egerdahl,* 72 F.3d at 619 ("Congress must make its intention to abrogate states' immunity 'unmistakably clear in the language of the statute,'" quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Glick,* 855 F.2d at 540. To ascertain whether Congress abrogated the states' Eleventh Amendment immunity in enacting legislation, a court must examine two issues: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida,* 517 U.S. at 55, 116 S.Ct. 1114 (internal citations omitted) (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)); *see also Dellmuth,* 491 U.S. at 229–30, 109 S.Ct. 2397; *Atascadero State Hosp.,* 473 U.S. at 243, 105 S.Ct. 3142.[5]

---

**5.** In *Seminole Tribe of Florida,* the United States Supreme Court held that Congress did not possess the authority under the Indian Commerce Clause to abrogate Eleventh Amendment state sovereign immunity. *Seminole Tribe of Florida,* 517 U.S. at 47, 116 S.Ct. 1114. In doing so, the Court overruled its

prior decision in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), where it had held that the Commerce Clause gave Congress the power to abrogate the states' Eleventh Amendment immunity, in addition to its power under section five of the Fourteenth Amendment. *See Seminole Tribe*

This exception, however, is inapplicable here since Tinius has not asserted the existence of such a congressional abrogation. Thus, the court will turn its attention to the state waiver exception.

■ ii. State waiver. Turning to the "state waiver" exception, the Eighth Circuit Court of Appeals has reiterated that where a state or state agency waives or intends to waive its immunity, "of course, no Eleventh Amendment problem exists." *Thomas*, 50 F.3d at 505. However, just as congressional abrogation requires unmistakable language in the federal statute, "[a]s a general matter, only unmistakable and explicit waiver of Eleventh Amendment immunity" by the state will suffice. *Id.* at 506 (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347); *Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir.1993) ("While Eleventh Amendment immunity can be waived, such waiver must be unequivocally expressed," citing *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347).

■ iii. The nature of the waiver. In order to constitute a waiver of Eleventh Amendment immunity by the state, a state statute " 'must specify the State's intention to subject itself to suit in federal court.' " *Angela R.*, 999 F.2d at 325 (quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene*, 948 F.2d 489, 493–94); *Faibisch v. University of Minn.*, 304 F.3d 797, 800 (8th Cir.2002) ("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so."). Furthermore, the Eighth Circuit Court of Appeals has described the Su-

preme Court's test of waiver as "stringent." *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir.), *cert. denied sub nom. Missouri v. Hankins*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir.1991). As the Eighth Circuit Court of Appeals reemphasized,

> A State "is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the test as will leave no reason for any other reasonable construction."

*Cooper*, 226 F.3d at 969 (quoting *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. 3142); *see Hankins,* 964 F.2d at 856 (same) (quoting *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. 3142).

iv. Failure to meet the "stringent" standard. The Eighth Circuit Court of Appeals has been reluctant to find waivers meeting the "stringent" standard required. For example, in *Angela R.*, the Eighth Circuit Court of Appeals found that an Arkansas statute that acknowledged the pendency of the case then before the federal court nonetheless fell "considerably short of the 'unequivocal waiver' of Eleventh Amendment immunity that *Atascadero* requires." *Angela R.*, 999 F.2d at 325. The court therefore found that the Eleventh Amendment barred an action to enforce a settlement agreement in federal court. *Id.* In *Burk*, a state indemnification statute that referred to damages awards by federal courts was nonetheless read *not* to provide "a clear and unequivocal waiver of the state's Eleventh Amendment immunity." *Burk*, 948 F.2d at 493. The statute in question in *Burk* provided that

> [t]he State of Arkansas shall pay actual, but not punitive, damages adjudged by a

*of Florida*, 517 U.S. at 65, 116 S.Ct. 1114. After *Seminole Tribe of Florida*, section five of the Fourteenth Amendment remains as the sole authority by which Congress may abrogate the States' immunity. *Id.* at 60, 116 S.Ct. 1114.

state or federal court ... against officers or employees of the State of Arkansas ... based on an act or omission by the officer or employee while acting without malice and in good faith within the course and scope of his employment and in the performance of his official duties.

ARK. CODE ANN. § 21–9–203(a) (Michie 1987); *Burk,* 948 F.2d at 493 n. 3 (quoting the Arkansas statute). The court rejected the plaintiff's argument that it would be unnecessary for the legislature to provide for indemnification for liability in federal lawsuits if in fact the state had not waived its immunity to suits for damages in federal court. *Burk,* 948 F.2d at 493. The lack of unequivocal waiver in this indemnification statute was bolstered by the court's finding that another statute provided "quite explicitly, that state officials *are* entitled to immunity in ordinary circumstances." *Id.* (citing ARK. CODE ANN. § 19–10–305(a) (Michie Supp.1991), with emphasis in the original). Waivers may also be "partial" rather than "general." *Hankins,* 964 F.2d at 856 (citing cases). Thus, in *Hankins,* the court found that the state had waived its immunity only as to the judgment in the case by participating in a trial of the case on the merits. *Id.* Similarly, in *Barnes,* the court found that a waiver of immunity in a Missouri statute, MO. REV. STAT. § 537.600, did not include the types of claims raised by the plaintiff, which were claims for violation of the First Amendment, the Fourteenth Amendment, and the First Amendment Privacy Protection Act of 1980, 42 U.S.C. § 2000aa–6(a), arising from the defendants obtaining the plaintiff's arrest record and disseminating it to the public. *Barnes,* 960 F.2d at 65. More recently, in *Cooper,* the Eighth Circuit Court of Appeals found that the fact that Minnesota waived its immunity to suit in Minnesota's state courts was insufficient to waive its Eleventh Amendment immunity. *Cooper,* 226 F.3d at 969.

*v.* **Express waiver.** The court therefore returns to Supreme Court precedent to identify language that would be sufficiently explicit to constitute a state's waiver of its Eleventh Amendment immunity to suits in federal court. In *Feeney,* the Court found that both New York and New Jersey had "expressly consent[ed] to suit in expansive terms" with language that the states "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise ... against the Port of New York Authority." *Feeney,* 495 U.S. at 306, 110 S.Ct. 1868 (citing N.J. STAT. ANN. § 32:1–157 (West 1963), and N.Y. UNCONSOL. LAWS § 7101 (McKinney 1979)). However, the Court rejected the assertion that this expansive consent could be interpreted to encompass suit in federal court as well as state court, because "such a broadly framed provision may also reflect only a State's consent to suit in its own courts." *Id.* The Court nonetheless found an express waiver by resolving any ambiguity in the consent to suit provision by looking to the statutory venue provision. *Id.* at 307, 110 S.Ct. 1868. That venue provision "expressly indicated that the States' consent to suit extends to suit in federal court," because the provision provided that " '[t]he foregoing consent [of N.J. STAT. ANN. § 32:1–157 (West 1963); N.Y. UNCONSOL. LAWS § 7101 (McKinney 1979)] is granted on the condition that venue ... shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.' " *Feeney,* 495 U.S. at 307, 110 S.Ct. 1868 (quoting N.J. STAT. ANN. § 32:1–162 (West 1963); N.Y. UNCONSOL. LAWS § 7106 (McKinney 1979)). The Court found that this provision "eliminates the danger ... that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment Immunity." *Id.* The

court rejected an argument that a venue provision could shape the Court's construction of a consent to suit provision, because the venue provision "directly indicates the extent of the States' waiver embodied in the consent provision." *Id.* Furthermore,

> The States passed the venue and consent to suit provisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The venue provision expressly refers to and qualifies the more general consent to suit provision. Additionally, issues of venue are closely related to those concerning sovereign immunity, as this Court has indicated by emphasizing that '[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.' *Pennhurst State School and Hospital v. Halderman,* 465 U.S., at 99, 104 S.Ct. 900.

*Feeney,* 495 U.S. at 307–08, 110 S.Ct. 1868.

### d. Waiver in this case.

█ The issue of waiver in this case turns on the waiver contained in the Iowa State Tort Claims Act. *See* Iowa Code § 669.4. Iowa Code § 669.4 provides that:

> The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter. However, the laws and rules of civil procedure of this state on change of place of trial apply to such suits.

> The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the state shall not be liable for interest prior to judgment or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the state were a private litigant.

> The immunity of the state from suit and liability is waived to the extent provided in this chapter.

> A suit is commenced under this chapter by serving the attorney general or the attorney general's duly authorized delegate in charge of the tort claims division by service of an original notice. The state shall have thirty days within which to enter its general or special appearance.

> If suit is commenced against an employee of the state pursuant to the provisions of this chapter, an original notice shall be served upon the employee in addition to the requirements of this section. The employee of the state shall have the same period to enter a general or special appearance as the state.

Iowa Code § 669.

█ The plain language of section 669.4 limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts. It is important to note that the Supreme Court recognized in *Feeney* that a state can create a limited waiver of this immunity by consenting to be sued in its own state courts without waiving its Eleventh Amendment immunity from suit in federal courts. *Feeney,* 495 U.S. at 306, 110 S.Ct. 1868 ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts," quoting *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)); *Welch v. Texas Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473–74, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (noting that state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immu-

nity in state court); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (noting that Court has consistently held that state's waiver of sovereign immunity in state courts is not waiver of Eleventh Amendment immunity in federal courts); *In re Secretary of Dep't of Crime Control and Public Safety,* 7 F.3d 1140, 1147 (4th Cir.1993) (quoting *Feeney,* 495 U.S. at 305–06, 110 S.Ct. 1868), *cert. denied sub nom. Barfield v. Secretary, North Carolina Dep't of Crime Control,* 511 U.S. 1109, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994); *Harrison v. Hickel,* 6 F.3d 1347, 1354 (9th Cir.1993) (quoting *Feeney,* 495 U.S. at 305–06, 110 S.Ct. 1868); *Kroll v. Board of Trustees of Univ. of Ill.,* 934 F.2d 904, 910 (7th Cir.) (same), *cert. denied,* 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *Riggle v. California,* 577 F.2d 579, 585 (9th Cir.1978) ("A state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amendment immunity from suit in federal courts."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 2036, 138 L.Ed.2d 438 (1997) ("States have real and vital interests in preferring their own forum [over a federal forum] in suits brought against them, interests that ought not to be disregarded based upon a waiver [of immunity in the state forum]"). Thus, a state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law. This is precisely the situation with the Iowa State Tort Claims Act.

As was noted above, a state's waiver of its Eleventh Amendment immunity will be found "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Feeney,* 495 U.S. at 305, 110 S.Ct. 1868. The Iowa State Tort Claims Act provides that Iowa state district courts

have exclusive jurisdiction to determine any suit or tort claim under that act. Absent reference to either Eleventh Amendment immunity or suit in *federal* court, the court cannot find that § 669.4 provides an express waiver of Eleventh Amendment immunity to suits against the state in federal court. *See Angela R.,* 999 F.2d at 325 (the state statute "'must specify the State's intention to subject itself to suit in federal court,'" quoting *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney,* 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene,* 948 F.2d 489, 493–94). As a result, the court cannot conclude that the State of Iowa has waived its Eleventh Amendment immunity in the Iowa State Tort Claims Act since that act does not expressly specify the state's intent to subject itself to suit in federal court. Therefore, this portion of defendants' motion to dismiss is granted and defendants Skorey and Cherokee Mental Health Institute, in their official capacities, are dismissed from Counts III, IV, V, VI, and VII of the amended complaint.

### e. Suit against defendants in their individual capacities.

Plaintiff Tinius further argues that he has brought his claims against defendants Skorey and Cherokee Mental Health Institute in their individual capacities. Tinius points out that he seeks punitive damages, which would normally point to an individual capacity suit. *See Armstrong v. Squadrito,* 152 F.3d 564, 581 (7th Cir.1998). He contends that, as a result, the doctrine of sovereign immunity does not bar his claims brought against defendants Skorey and Cherokee Mental Health Institute in their individual capacities. The court notes that the capacity in which he has brought suit against Skorey and Cherokee Mental Health Institute is not

identified in the amended complaint.[6]

In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court emphasized the necessity for observing the distinction, pointing out the salient characteristics that separate the two kinds of cases.

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon, supra,* 469 U.S., at 471–472, 105 S.Ct., at 878. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id.* at 165, 105 S.Ct. 3099.

The Eighth Circuit Court of Appeals has instructed that courts should assume that an action brought against an individual is brought against that individual solely in that individual's official capacity when a complaint is silent on the issue. *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir.1995) ("[A] plaintiff who wishes to sue a state official in his personal capacity must so specify in her complaint... If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims."); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989) (holding that individual-capacity suits must be clear enough to notify defendant of the personal nature of the suit); *accord Wells v. Brown,* 891 F.2d 591, 592 (6th Cir.1989) ("It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually."); *Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985) ("[W]e will ordinarily assume that he has been sued in his official capacity and only in that capacity... If a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities... he should expressly state so in the complaint."); *Benskin v. Addison Township,* 635 F.Supp. 1014, 1020 (N.D.Ill.1986) ("When a complaint is silent on the issue, we should normally assume defendants are sued in their official capacities only; a complaint should expressly say 'individual capacity' when a plaintiff intends to sue a defendant as such."). The "bright line" rule adopted by the Eighth Circuit Court of Appeals enables the litigants and the court to determine with certainty and without any need for additional proceedings the capacity in which state officials are purportedly sued. Moreover, requiring the plaintiff to specify whether an official is being sued individually does not place any undue burden on that party. It requires nothing more than that a plaintiff clearly state what he or she means. Since the amended complaint in this case fails to

---

**6.** The court does note that Tinius has sued both Sheriff Bass and the Deputies in both their official and individual capacities.

specify that a claim is being asserted against defendants Skorey and Cherokee Mental Health Institute in their individual capacities, it will be construed as a suit against them in their official capacities only.

### III.  CONCLUSION

The court concludes that defendants Skorey and Cherokee Mental Health Institute have Eleventh Amendment immunity. Thus, defendants Skorey and Cherokee Mental Health Institutes's Motion To Dismiss is granted and defendants Skorey and Cherokee Mental Health Institute are dismissed from Counts III, IV, V, VI, and VII of the amended complaint.

**IT IS SO ORDERED.**